## MILLER *v.* OAK CLEANERS & DYERS, INC.

### DECISION OF THE COURT.

1. JUDGMENT—CONSENT FINAL DECREE—EQUALLY DIVIDED COURT.
   Consent final decree relieving individual defendants from liability for deficiency in action for return of moneys delivered to defendant corporation and the individual defendants is affirmed by an equally divided court.

### FOR AFFIRMANCE.
DETHMERS, KELLY, SMITH, and O'HARA, JJ.

2. JUDGMENT—EQUITY—CONSENT DECREE.
   *A plaintiff in a suit for appointment of a receiver for a corporation, 50% of whose stock plaintiff had purchased and contributed other funds to avoid foreclosure against corporate property had responsibility of seeing to it that consent final decree expressed unequivocally the precise nature and extent of the liability it imposed, or object to its entry.*

3. SAME—CONSENT DECREE—MERGER OF CLAIMS.
   *A consent final decree from proposed decree for which there had been deleted provision imposing liability upon individual defendants and which specifically provided it was not appealable merged all claims asserted against defendants.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2] 4 Am Jur 2d, Appeal and Error § 116.
    Right to appellate review of consent judgment.  69 ALR2d 755.
[3–9] 30A Am Jur, Judgments § 148 *et seq.*
[10] 5 Am Jur 2d, Appeal and Error § 1009 *et seq.*

4. SAME—FINAL DECREE.

> *A final decree terminates litigation, and, unless vacated or modi-
> fied within proper time, precludes the court from making incon-
> sistent orders or from further proceedings beyond its mere
> enforcement.*

5. SAME—CONSENT FINAL DECREE—CONSTRUCTION OF DECREE—COR-
PORATE RECEIVERSHIP.

> *Consent final decree, as construed by trial court to limit plaintiff's
> recovery to assets of corporate receivership and without im-
> posing personal liability upon individual defendants, other
> owners of stock in the corporation, is affirmed under record
> presented.*

FOR REVERSAL AND REMAND.

T. M. KAVANAGH, C. J., and BLACK, SOURIS, and ADAMS, JJ.

6. JUDGMENT—CONSTRUCTION OF CONSENT DECREE—LIABILITY OF IN-
DIVIDUAL AND CORPORATE DEFENDANTS.

> *Trial court's construction of so-called "consent final decree" which
> had been entered following pretrial conference, whereby in-
> dividual defendants were relieved of paying sums which plain-
> tiff claimed to have "paid, loaned or advanced for and on behalf
> of the" corporate and individual defendants, held, improper,
> where, although ambiguous in that payor was not designated at
> time the decree was made the corporation was insolvent, and
> provision for appointment of receiver in the event of nonpay-
> ment was designed for enforcement of payment.*

7. SAME—CONSENT DECREE.

> *A consent decree properly may be entered only when all parties
> thereto knowingly and understandingly agree to the terms
> thereof.*

8. SAME—AMBIGUITY.

> *A trial court should not permit entry of a decree so phrased and
> negotiated under such circumstances that the parties to the
> litigation properly may, with some rational justification, enter-
> tain divergent notions concerning the terms thereof.*

9. SAME—CONSENT DECREE—AMBIGUITY.

> *So-called consent final decree which had been entered following
> pretrial conference should be ordered reversed, where the decree
> is ambiguous as to whether individual defendants were to be
> relieved from liability to plaintiff and such issue remanded
> for further proceedings on issues framed by the pleadings, but
> unambiguous portion of decree relative to receivership and
> dissolution of defendant corporation affirmed.*

10. COSTS—CONSENT FINAL DECREE.

*No costs are awarded on appeal from so-called consent final decree, where the ambiguity therein is attributable in part to all parties thereto, and remand is made for resolution of issue ambiguously disposed of in the decree.*

Appeal from Oakland; Beer (William John), J. Submitted January 5, 1965. (Calendar No. 4, Docket No. 50,591.) Decided April 9, 1965. Rehearing denied May 10, 1965.

Bill of complaint by David J. Miller against Oak Cleaners & Dyers, Inc., a Michigan corporation, Sam Jacobs, Ann Jacobs, and H. Paul Jacobs, jointly and severally, for the return of moneys delivered to defendants. Consent decree entered. Motion made to construe consent decree. Judgment for defendants. Plaintiff appeals. Affirmed by an equally divided court.

*Goldman & Grabow,* for plaintiff.

*Wendell Brown,* for defendants.

O'HARA, J. This is an appeal from a judgment entered by a circuit judge in a chancery action. The judgment recites:

"It is hereby ordered and adjudged:

"1. That the consent final decree entered herein under date of May 24, 1961, was total in disposing of all claims of the respective parties hereto;

"2. That the consent final decree entered herein on May 24, 1961, was agreed to by plaintiff, with the advice of his counsel;

"3. That plaintiff, David J. Miller, is foreclosed by virtue of the consent decree in this cause prepared and entered by this court on May 24, 1961, from any claims of a personal judgment or deficiency against Sam Jacobs, Ann Jacobs, and H. Paul Jacobs,

jointly and severally, such claims having been abandoned under the consent decree.

"4. That none of the defendants need render any accountings."

The bill of complaint named as defendants Oak Cleaners & Dyers, Inc., a Michigan corporation, Sam Jacobs, Ann Jacobs and H. Paul Jacobs, individuals, and was filed February 19, 1960. It alleged that the corporation was in imminent danger of complete financial collapse; that the personal defendants solicited plaintiff to bail out the fast sinking corporate ship; that after he did so and received in return 50% of the corporate stock, the individual defendants ousted him from any participation in corporate affairs and generally made his business life unbearable. The bill prayed an order to show cause why a receiver should not be appointed. Defendants denied virtually everything except that plaintiff was in fact the owner of 50% of the stock and objected to the proposed receivership. The court issued a temporary injunction as prayed. Replies to the answers were filed, then what is designated in the record as "settlement proceedings of May 10, 1961" took place. They consisted of a statement dictated by the trial court. Its substance was: The form of the settlement would be a consent decree; $22,500 was to be paid plaintiff in the extinguishment of all his claims and for the surrender of his stock interest; if the foregoing amount was not paid by August 10, 1961, the court would appoint a permanent receiver, dissolve the corporation and wind up its affairs. A further provision was to expunge from the records all "personal accusations" against defendant H. Paul Jacobs. When he completed dictating the terms, the court addressed counsel:

"This consent decree is to be forthwith prepared. It is my purpose to sign the decree either tomorrow

or not later than Friday of this week, so I am asking counsel to do the work of the scriveners without delay. Now, have I overlooked anything so far as you are concerned at plaintiff's counsel table?

*"Mr. Goldman:* No, I believe that Your Honor has very fully covered the situation.

*"The Court:* Thank you. Mr. Brown. * * *

*"Mr. Goldman:* That is satisfactory, Your Honor.

*"Mr. Brown:* I would like to suggest that inasmuch as this is a consent final decree that a paragraph whereby each side, plaintiff and defendants, waive all appeal rights should be incorporated.

*"The Court:* You don't have to. A consent decree is not appealable.

*"Mr. Brown:* I understand that, but I would like to see it in there.

*"The Court:* You may have it put in there."

On May 24, 1961, Judge Beer signed what is denominated in the record "consent final decree." Pertinently it provides:

"Upon join motion of Goldman and Grabow, attorneys for plaintiff, speaking through David A. Goldman, and Wendell Brown, attorney for the defendants, Earl Jacobs of counsel,—by consent of all counsel.

"It is ordered, * * *, that David J. Miller, on or before August 10, 1961, will be paid * * * $22,500 * * *, upon being so paid, will surrender his stock interest * * *,

"It is further ordered, * * *, that if plaintiff, * * *, is not paid the sum of $22,500 by August 10, 1961, on Friday, August 11, 1961, * * *, this court will sign an order appointing a permanent receiver * * * and wind up the affairs of the * * * corporation; * * *

"It is further ordered, * * * that all parties hereto, through their respective legal counsel, have in open court agreed to waive any and all appeal rights with reference to the within consent final decree; and any and all such appeal rights, if any,

be and the same are hereby determined and decreed to have been waived by all parties hereto."

The $22,500 was not paid and on August 11, 1961, a petition was then addressed to the court for the appointment of a permanent receiver to "wind up the affairs of the defendant corporation," and "to pay the sum of $22,500 to plaintiff."

The permanent receiver was appointed. For over 2 years the matter was the subject of an infinity of motions, petitions, briefs, affidavits, replies, and replications. All the while the business was being operated by the receiver with no greater financial success than it had been by the corporate stockholders. The agreed sum was never paid. Finally, the case again came before the court on a petition to construe the decree. The court said:

"Gentlemen, I am ready to rule on pending matters unless there is further arguments at this time.

"Plaintiff, a vice-president, a director and substantial stockholder in Oak Cleaners and Dyers, Inc., a Michigan corporation, on December 19, 1960 filed suit in chancery seeking among other things an accounting and appointment of a receiver for said corporation.

"Named defendants in addition to the corporation included its directors, officers and stockholders.

"In December of 1959 plaintiff Miller unwisely and unfortunately purchased 50% of the capital stock of the corporation for $15,000. I say unwisely because Miller was well aware of the financial problems of the corporation and its desperate straits as reflected from his own bill of complaint. I say unfortunately because of this litigation which has followed and the fact there is a family relationship between the stockholders. Sam Jacobs is the brother-in-law of David Miller, the plaintiff, and the other named individual defendants are nephews of the plaintiff.

"In January of 1960 plaintiff Miller went further in his investment by giving another $6,000 to the corporation to stop an alleged mortgage foreclosure. * * *

"For a while things seemed to progress well, but after an illness in October of 1960 plaintiff Miller ceased participating in the corporate activities, as he alleges, upon direct order of Sam Jacobs. Plaintiff Miller departed the scene of actually working in the corporation on November 27, 1960. In due course this litigation was reached on the calendar for pretrial preliminary to trial. A consent decree was arrived at and filed May 24, 1961. Principally under its terms plaintiff Miller was to receive $22,500 by August 10, 1961 or a receiver was to be appointed. August 11, 1961 plaintiff Miller, not being paid, petitioned for the appointment of a receiver under the consent decree. This petition was opposed, specifically by the defendant, Paul Jacobs. It should be noted at all times the appointment of a receiver and the dissolution of the corporation has been opposed under the pleadings by the defendants. * * *

"In due course the receiver was instructed to terminate the business of the corporation and wind up its affairs. This he has done, and I feel satisfactorily. Before considering his final accounting I must rule upon whether or not plaintiff Miller was foreclosed by virtue of the consent decree from any claims of a personal judgment against the noncorporate defendants. I so hold that he is. He sought in this litigation originally such a determination and liability among other things. He agreed with the advice of his able counsel, Mr. Goldman, to the consent decree. Under the consent decree he abandoned, as I interpret the law and what happened here, his claims for a personal judgment or deficiency. It must be remembered the individual defendants also put forth claims. They had interests in the defendant corporation. They were opposed to the appointment of a receiver. Under the consent decree such contentions on their part were abandoned. Even-

tually, by virtue of the operation of the consent decree, the receivership which was opposed by all the defendants did come into being. I feel the consent decree was total in disposing of all claims and that is the way it must be construed, understood, and read."

From the final judgment, based on the court's holding, plaintiff filed a claim of appeal as of right. Plaintiff claims that if the original decree did impose personal liability on the individual defendants, it was a consent decree, otherwise it was not.

Defendants, contra, contend that it was a consent decree conclusive of all issues raised by the pleadings, and that it merged plaintiff's claim of personal liability against the individual defendants in its terms. The record discloses that defendants' counsel (before consulting his clients) was willing to approve, and did approve, a proposed consent decree *both as to form and substance,* which uncontrovertibly charged the individual defendants with personal liability for the $22,500. The individual defendants refused to approve it, ratify it, or consent to its entry. It was not entered. They made their position clear on the same day the decree was approved by their counsel without their consent. The record further discloses that defendant's counsel immediately advised plaintiff's attorneys of this fact.

It is our inescapable conclusion then that before the "consent final decree," which Judge Beer was called upon to construe, was approved and entered by him, both counsel were fully aware of the fact that the individual defendants would not and had not consented to the entry of one which imposed upon them personal liability for the agreed settlement sum in unequivocal terms.

So concluding, we cannot escape the corollary conclusion that it became the responsibility of plaintiff who was asserting the claim to see that the decree expressed unequivocally the precise nature and ex-

tent of the liability it imposed. Saving this, plain-
tiff was burdened to object to its entry. If, as it
seems to be plaintiff's partial position, he was af-
forded no opportunity to object to its entry, then
certainly he was obligated to move forthwith to va-
cate it when it was entered.

Whatever might or might not have been estab-
lished in a hearing on the merits, the nagging fact
remains that the decree was entered. From it had
been deleted the words "by the defendants" after
the commitment to payment. We would be hard put
indeed, under these circumstances, to impose upon
it our construction as opposed to that of the trial
judge who entered it. Both as to the effect of the
entry of the decree, which by its own terms was
"final" and "unappealable" and as to its merging the
claim asserted against the individual defendants
within its terms, we are constrained to affirm the
learned trial judge. The controlling principle is
correctly cited for application by defendants-
appellees:

" 'A final decree terminates the litigation and, un-
less vacated or modified within proper time,  *   *   *
precludes the court from any further proceedings
beyond its mere enforcement, no other decree can
thereafter be entered in the cause, other than such
as may be necessary to the enforcement of the final
decree, and no valid order inconsistent with such de-
cree can thereafter be made.' 30A CJS, Equity, § 582,
p 649."

The judgment of the trial court is affirmed. Costs
may be taxed by appellees.

Dethmers, Kelly, and Smith, JJ., concurred with
O'Hara, J.

Souris, J. (*for reversal and remand*).  Plaintiff
started suit in December of 1960 against the corpo-

rate and individual defendants, claiming that he had been defrauded by them in connection with his purchase of capital stock of the corporate defendant for $15,000 and his subsequent advance of $6,000 to assist the corporation in paying some of its current liabilities. Plaintiff prayed for an accounting of the affairs of the corporate defendant by the individual defendants, for payment to plaintiff of the reasonable value of the services rendered by him as an officer and employee of the corporate defendant, for appointment of a receiver for the purpose of dissolving the corporate defendant, and for repayment of the sum of $21,000 by him "paid, loaned or advanced for and on behalf of the" corporate and individual defendants. Plaintiff's allegations were duly denied by each of the defendants, and in due time the matter was scheduled for pretrial conference before the chancellor.

The record discloses that at the conclusion of that conference the chancellor placed upon the record a statement that the matter had been settled and that a consent decree should be presented to him for entry forthwith. The chancellor thereupon proceeded to set forth the terms to be contained in the decree. Included among the terms to be contained in the decree, as stated by the chancellor, were the following:

"David Miller will be paid on or before August 10, 1961, the sum of $22,500 in extinguishment of all of his claims of action as alleged in these proceedings, or for that matter any other claims that might be indirectly involved, and will surrender his stock interest.

"Two: If he is not paid this amount of money by August 10, 1961, on Friday, August 11, 1961 at any time presented, this Court will sign an order appointing a permanent receiver to dissolve and wind up the affairs of the defendant corporation."

Thereafter, plaintiff's counsel prepared a proposed decree which expressly provided that the sum of $22,500 be paid plaintiff "by the defendants". That proposed decree, having been rejected by defendants, was not signed by the chancellor, however. Instead, the chancellor entered the "consent final decree" which reads in its pertinent part as follows:

"It is ordered, adjudged and decreed, that David J. Miller, on or before August 10, 1961, will be paid the sum of $22,500 in extinguishment of all of his claims of action as alleged in these proceedings, and of any other claims he may have that may be indirectly involved herein; and that plaintiff, upon being so paid, will surrender his stock interest in defendant corporation; and,

"It is further ordered, adjudged and decreed, that if plaintiff, David J. Miller, is not paid said sum of $22,500 by August 10, 1961, on Friday, August 11, 1961, at any time presented, this Court will sign an order appointing a permanent receiver to dissolve and wind up the affairs of the defendant corporation".

Plaintiff was not paid by any of the defendants the amount provided to be paid him by the decree, and on August 11, 1961 he petitioned the court for appointment of a receiver. The chancellor appointed John B. Osgood receiver of the corporate defendant and ultimately, in September of 1963 the affairs of the corporation were wound up, the corporation liquidated, its assets distributed to its creditors and the receiver discharged.

In the meantime, a dispute developed between the parties as to the meaning of the "consent final decree", plaintiff contending, and defendants denying, that plaintiff was entitled thereby to payment from the individual defendants of the sum of $22,500 notwithstanding the appointment of the receiver and the corporation's subsequent liquidation. The in-

dividual defendants contended that the decree imposed no personal liability on them, but rather that it granted plaintiff alternative relief: either payment of $22,500 for the surrender of his stock or the appointment of a receiver for defendant corporation.

It is regrettable that a decree so patently ambiguous ever was entered, particularly so when the ambiguity quite obviously was the subject of some controversy between the parties, as evidenced by the defendants' rejection of the plaintiff's proposed decree. The ambiguity ultimately was resolved by the chancellor in favor of the defendants by construction of the "consent final decree" in the final judgment that the chancellor entered in September of 1963. Mr. Justice O'Hara affirms the construction placed thereon by the chancellor. I disagree.

I think it incredible that plaintiff would have assented to a decree so construed, for it was evident even in May of 1961, at the time of the pretrial conference when the "consent final decree" was entered, that defendant corporation was insolvent and that its liquidation could avail plaintiff nothing. The only sensible way to view the provision for appointment of a receiver, which had been resisted by defendants, is not as an alternative to payment to plaintiff of $22,500, but rather as a device to encourage prompt payment thereof. So viewed, the fact that receivership became necessary does not mean that plaintiff no longer is entitled to the stipulated payment.

Unfortunately the decree inexplicably fails to specify by whom payment is to be made. Plaintiff alleges that he thought that the individual defendants were liable therefor absent decretal language restricting the obligation to the corporate defendant. It seems to me that he is justified in so interpreting it, for if it were interpreted to impose such liability

only upon the corporate defendant, the provision for payment to plaintiff would have been meaningless in view of the then current insolvency of the corporation. On the other hand, it may be assumed charitably that the individual defendants believed that their rejection of the form of decree proposed by the plaintiff, in which payment was expressly required to be made "by the defendants," meant that the decree actually entered, which did not contain the quoted words, would not make them personally liable.

In such circumstances, I do not think it justifiable to say either that plaintiff agreed to relinquish his claim of personal liability against the individual defendants or that those defendants agreed to assume such liability by the ambiguous decree which was entered. A consent decree properly may be entered only when all parties thereto knowingly and understandingly agree to the terms thereof, see *Township of Royal Oak* v. *City of Huntington Woods* (1945), 313 Mich 137, and a chancellor should not permit to be entered a decree so phrased and negotiated under such circumstances that the parties to the litigation properly may, with some rational justification, entertain divergent notions concerning the terms thereof.

I would reverse and remand this cause for further proceedings, including a full testimonial hearing on the issues framed by the pleadings if the parties are unable to reach a settlement of their dispute on remand. Because it cannot be doubted that all parties hereto consented to the receivership and the dissolution of the corporation, I would affirm those proceedings. The ambiguity in the decree which necessitated this appeal being attributable in part to all parties, I would award no costs.

T. M. KAVANAGH, C. J., and BLACK and ADAMS, JJ., concurred with SOURIS, J.